No. 74–314.  LEWIS *v*. AMERICAN FEDERATION OF TELEVISION & RADIO ARTISTS.  Ct. App. N. Y.  Certiorari denied.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE joins, dissenting.

These cases, as I view them, present the issue of whether a person suffers an infringement of his First Amend-

ment rights when he is compelled to pay union dues (or their equivalent) as a precondition to expressing his ideas through a public broadcasting medium.[1]

In *Railway Employes' Dept.* v. *Hanson,* 351 U. S. 225 (1956), a union-shop agreement authorized under the Railway Labor Act was challenged under the First and Fifth Amendments. While holding on the merits that a union-shop requirement does not violate those Amendments, we held that the Railway Labor Act provision governing union-shop agreements constituted sufficient governmental action to require consideration of the constitutional issues: "[T]he federal statute is the source of the power and authority by which any private rights are lost or sacrificed." 351 U. S., at 232. We left open the possibility that a membership or dues requirement might, in some circumstances, be imposed in contravention of the First Amendment, though no such problem was presented on the record in that case.

In *Hanson,* governmental action was based on the Railway Labor Act, which provided that state "right to work" laws were superseded and that a union-shop agreement was permissible notwithstanding such laws. 351 U. S., at 231–232. Thus that federal Act placed "the imprimatur of the federal law" upon union-shop agreements. The Taft-Hartley Act (in contrast) authorizes union-shop agreements only in the absence of contrary state law. 61 Stat. 151, 29 U. S. C. § 164 (b). Yet there still is a substantial argument in favor of a holding that a union-shop agreement under the NLRA bears the imprimatur of federal law.

The fact that § 8 (a)(3) [2] is phrased in permissive rather than mandatory terms would not, in and of itself,

---

[1] I agree with the respective Courts of Appeals that issues concerning union disciplinary sanctions (or threats of such sanctions) are not properly before us.

[2] 49 Stat. 452, as amended, 29 U. S. C. § 158 (a)(3).

prevent a finding of governmental action. The Federal Government has undertaken extensive regulation of the field of labor-management relations, and by its approval and enforcement of union-shop agreements, may be said to "encourage" and foster such agreements. *Linscott* v. *Millers Falls Co.*, 440 F. 2d 14 (CA1 1971); cf. *Reitman* v. *Mulkey*, 387 U. S. 369 (1967).

It is significant that congressional permissiveness toward union-shop agreements is coupled with the NLRA's "exclusivity" principle, whereby a majority vote of the employees in a particular category is sufficient to designate an exclusive bargaining representative whose actions bind majority and minority alike. When Congress authorizes an employer and a union to enter into union-shop agreements and makes such agreements binding and enforceable over the dissents of a minority of employees or union members, it has cast the weight of the Federal Government behind the agreements just as surely as if it had imposed them by statute.

There is a substantial question whether the union-dues requirement imposed upon these petitioners should be characterized as a prior restraint or inhibition upon their free-speech rights. In some respects, the requirement to pay dues under compulsion can be viewed as the functional equivalent of a ."license" to speak. In several related decisions, we have left open the possibility that First Amendment associational freedoms would be infringed by a requirement that a union member subject to a union-shop agreement pay dues to support union political activities with which he disagrees. *Machinists* v. *Street,* 367 U. S. 740 (1961); *Railway Employes' Dept* v. *Hanson, supra.* Cf. *Lathrop* v. *Donohue,* 367 U. S. 820 (1961). We held in *Street* that the Railway Labor Act should be construed to deny unions the power to compel a union member to pay dues in support of union political causes of which he disapproves; we indicated that some

suitable formula of apportionment could be worked out, so that the union member would bear his share of the cost of collective-bargaining activities from which he benefited, but would not be forced to contribute to political activities if he did not wish to do so. Whether a similar accommodation could be worked out in the present case, I do not know. Our cases dealing with flat license fees or registration requirements, such as *Thomas* v. *Collins,* 323 U. S. 516 (1945), and *Murdock* v. *Pennsylvania,* 319 U. S. 105 (1943), tend to suggest that even a minimal payment designed solely to cover administrative costs may be impermissible in a First Amendment context. There remains a question of whether an accommodation respecting dues could be worked out in the present case. Whatever the outcome, I believe that the issues are sufficiently substantial to call for plenary consideration.